## Sheets *versus* Allen.

The principles which govern mining leases, that actual possession of the tenants carrying on the mining operations, is notice of his interest to a third person, as fully as is the tenancy of a dwelling-house, and that if the lease is for a term not exceeding three years, it is valid, though not in writing, apply to a lease of land with right to quarry minerals or dig clay.

February 3d 1879. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, WOODWARD, TRUNKEY and STERRETT, JJ.

Error to the Court of Common Pleas, No. 2, of *Philadelphia county*: Of July Term 1878, No. 143.

Trespass *vi et armis* by Sheets & Hinckle against Benjamin Allen and John A. Gerritt, for digging and removing clay from the premises of plaintiffs.

At the trial before Mitchell, J., it appeared that on May 20th 1874, Gerritt, one of the defendants, by deed, without reservation, conveyed to John J. Griffith, the land out of which the alleged trespass arose, and that in May 1875, the plaintiffs, at public sale, without any reservation, purchased the same from Griffith. The property in question, which consisted of a number of lots, was originally bisected by the Buck road, and running as it did diagonally through the land cut it up into irregular parcels. Gerritt, it appeared, owned on one side of the road and Griffith on the other, and when in 1873 the road was abandoned and the land reverted to the owners, Gerritt, for the purpose of squaring the lines, conveyed to Griffith the lots in dispute, which were in part the land which reverted to Gerritt out of the Buck road. In 1854 Gerritt had leased to Allen a tract of land, including a portion of the tract in question, at a yearly rental of $1000, with the right to dig clay. Under this lease, which was in writing and under seal, Allen took possession and erected brick-kilns, sheds and offices. When the land which had been embraced in the Buck road reverted to Gerritt by the vacation of the road, Allen, under a verbal lease made in 1873 or 1874, proceeded, under the direction of Gerritt, to take the clay therefrom. The clay had already been taken from a portion of the land when the plaintiffs received their deed from Griffith, and Allen was proceeding to remove the rest, under instructions from Gerritt to do so, when the plaintiffs notified the men who were digging the clay that they were working upon plaintiffs' ground. The men paid no attention to the notice, and resumed their digging, when plaintiffs had them arrested. Allen was subsequently served with notice, but pending proceedings in equity for an injunction he removed the clay from the whole plot.

The court, under objection, admitted the following offer of defendants:

" That Allen was a tenant of Gerritt, for these premises, prior to conveyance to plaintiffs, for over twenty years; that the fact was

well known to Sheets, and that he was in possession of these lots, under his lease, with the right to dig clay, before plaintiffs bought from his landlord."

The plaintiff asked the court to charge as follows:

If Gerritt conveyed the premises in question to Griffith, in May 1874, without reserving any rights, and the latter conveyed to the plaintiffs, in 1875, without reservation or notice, the lease relied on would have no force as against the plaintiffs, and the defendants had no authority in January 1876, to enter upon the land and remove the clay, and the verdict should be for the plaintiffs; which the court refused, because there was no evidence of any notice on the part of the defendants' landlord or his grantees, the plaintiffs, to terminate the lease.

In the general charge, the court said:

"If there was a lease for these premises, either verbal or in writing, prior to the conveyance to Griffith, then Allen was entitled to the possession of that property, and to take away the clay from it, and no conveyance of his landlord would affect these rights; and they were not subject to any action of his landlord or any other purchaser, over his head. When Sheets became owner of this property he acquired then the right which Gerritt previously had to give notice to Allen that he had determined to terminate the lease, but there is no evidence of any such notice having been given, and therefore the plaintiffs proceeded as if there was no lease. If Allen was a tenant before Sheets bought the property, then he was entitled to take the clay."

The jury returning to the court for further instructions as to the effect of a verbal lease, the court then said:

"If there was a verbal lease made in 1873, to cover the lots in question, it was a lease from year to year, and if notice was not given by the plaintiffs to the defendants to quit at the end of any year, the lease would be binding as to them, and they cannot recover."

The verdict was for defendants, and after a motion for a new trial had been refused, the plaintiffs took this writ and assigned for error the admission of the above evidence, the answer to plaintiff's point and the foregoing portion of the charge.

*J. M. Moyer*, for plaintiffs in error.—Clay is a part of the land, and would pass to the heir by inheritance, and not as a chattel to the executor or administrator: Toller's Law of Executors 193; Roberts on Frauds 365; Richard Lilford Case, 11 Rep. 85. As part of the realty the right to take it cannot exist except by deed: Huff *v.* McCauley, 3 P. F. Smith 206. Allen had no deed, not even a written lease to enter and take the clay. He was not in possession of the land which was a part of a common open to the public, and for which, at the time of the conveyance to plaintiffs, he

[Sheets v. Allen.]

had paid no consideration. The case therefore does not fall within the principle of an executed license, as laid down in LeFevre v. LeFevre, 4 S. & R. 241. Whatever the license was, it remained executory at the time of the conveyance, and therefore revocable. It was terminated by the deed to Griffith by the licensor : Yeakle v. Jacobs, 9 Casey 377 ; Drake v. Wells, 11 Allen 142 ; Coleman v. Foster, 1 Hurlst. & N. 37 ; Tillotson v. Preston, 7 Johns. 285 ; Whitemarsh v. Walker, 1 Metc. 316.

The court below treated the case on trial as though it were a tenement, occupied by a tenant, or enclosed land actually in the possession of the defendant for the purposes of cultivation, in either of which cases the ruling might be free from exception. In such a case possession would have been notice to the vendee, and he would have taken subject to the rights of the tenant, whether the lease was in writing or by parol, and notice to quit at the end of the year would have been necessary to dispossess the tenant. Here there was no one in possession to notify.

W. A. Manderson, for defendants in error.—Allen claimed the right to dig and take the clay from the lots in question, under the lease executed to him in 1854. True, at the time of the execution of the lease, the lots in question were part of the bed of Buck road, a public highway, but when in 1873 the said road was vacated, the title to the same reverted to the owners on each side, and under his lease from that portion which reverted to Gerritt, Allen had the undoubted right to dig and take the clay.

It was not a mere license in Allen to dig and take the clay, but it was a right by grant—created and existing by deed—by this lease executed in 1854, and under which he claimed.

Mr. Justice TRUNKEY delivered the opinion of the court, February 17th 1879.

At the outset, the plaintiffs assume that Allen's defence was a parol license to enter upon the land and dig clay, without limit as to time or quantity. Upon this their argument is built, fortified by numerous authorities, demonstrating that the learned judge committed a series of blunders. There is no escape from this conclusion, if it be that Allen claimed an incorporeal hereditament—a mere right to take clay—resting upon an oral promise. Therefore, we pass at once to consider the nature of the defence, as set forth in the defendants' offer of testimony, the receiving of which is assigned for error, namely, " that defendant Allen was a tenant of Gerritt, for these premises, prior to conveyance to plaintiffs, for over twenty years ; that the fact was well known to Sheets, and that he was in possession of these lots, under his lease, with the right to dig clay, before plaintiffs bought from his landlord."

Instead of a mere license, the defendants put forward an actual

8 NORRIS—4

[*Sheets v.* Allen.]

interest or estate in the land, a leasehold in possession of the tenant, which was known to the plaintiffs when they purchased and took title. In order to constitute a lease of mines, it is not necessary that the lessee should have an interest in the surface, for minerals may form a distinct inheritance in the lands of which they are part, and consequently an estate may be created in and restricted to any specified mineral. In the mining districts leases of lands for purposes of taking ore, coal or petroleum, are common, wherein the tenants are restricted to the use of only so much of the surface as necessary for mining purposes, with right in the lessor to use the surface as he chooses, save that he may not interfere with the rights of the lessee. Frequently the lands are unoccupied for any purpose other than the mining, and frequently they are occupied by the lessor for agricultural or other uses. The actual possession of the tenant, carrying on his mining operations, is notice of his interest to a third person as fully as is the tenancy of a dwelling-house. And if the lease is for a term not exceeding three years, it is valid, though not in writing. A parol agreement that a person shall enter on the land of another, dig ore, erect buildings, &c., and pay fifty cents a ton for all ore removed, amounts to a lease : Moore *v.* Miller, 8 Barr 272. Like principles apply to a lease of land with right to quarry minerals or dig clay. The right of a tenant in possession, under such a lease, is not extinguished in favor of a purchaser who knew the fact. And when the tenant is taking the clay, the notice to third persons of his estate is marked, for the working is upon the surface. It is none the less a lease, if the land is not enclosed or cultivated. The offer was admissible, and if the testimony established the facts as therein alleged, the defence was complete. That the evidence thereof was sufficient to submit to the jury, is not denied ; nor is error assigned to its submission. Indeed Sheets himself testified that he knew Allen was Gerritt's tenant, and had his brick-yard on the ground ; that he dug clay for his bricks, and had taken about eight feet off the west lot at time of purchase, and that there was no division of the property into lots, except on paper. This matter may have been materially qualified, or explained away, by other parts of his testimony, in its application to the land he purchased. The whole testimony was for the jury. The learned judge seems to have clearly apprehended the nature of the defence, and his rulings, as set forth in the assignments of error, were entirely sound.

The plaintiffs raised and discussed some points not embraced in the assignments, upon which the court was not requested to charge, and these cannot now be considered. If error was committed, it must be shown by the record. For aught that appears, the court gave correct instructions in reference to the portions of land occupied for a highway, prior to vacation of Buck road in 1873.

Judgment affirmed