Commonwealth *v.* Solley (et al., Appellant).

Argued January 4, 1956. Before STERN, C. J.,
STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and AR-
NOLD, JJ.

*F. Cortez Bell*, with him *Walter M. Swoope, John
B. Gates* and *Bell, Silberblatt & Swoope*, for appellants.

*Harry F. Stambaugh,* Special Counsel, with him *Phil H. Lewis* and *Joseph L. Donnelly,* Deputies Attorney General, *W. Albert Ramey,* Special Counsel, and *Herbert B. Cohen,* Attorney General, for appellee.

OPINION BY MR. JUSTICE CHIDSEY, March 13, 1956:

This is an appeal by Anthony Hile, Hubert H. Hile, Mary Katherine Hile and Rebecca J. Hile Morley, defendants in one group hereinafter called the Hiles, and defendant Cresson Hills, Inc., a Pennsylvania corporation, from a judgment entered on a jury verdict in favor of the Commonwealth of Pennsylvania against all of the above named defendants and defendants Roscoe F. Solley and D. G. Arnold[1] holding them jointly and severally liable in the amount of $3,792.52, representing cost to the Commonwealth of repairing a portion of a State highway which had subsided due to a strip mining operation.

The Hiles, who are the owners of a parcel of land in Ferguson Township, Clearfield County, through which runs State Highway Route 857, on March 4, 1952 entered into a "lease" agreement with J. H. Lasher granting to the latter an exclusive right to strip mine the flint clay on the land, which "lease" was assigned by J. H. Lasher to defendant Cresson Hills, Inc.  J. H. Lasher is the president of Cresson Hills, Inc. and his son, Humes T. Lasher, is the secretary and treasurer. Cresson Hills, Inc. contracted with defendants Solley and Arnold to remove the overburden and actually mine the clay.  At the point where Solley and Arnold began to remove the overburden on the Hiles' land,

---

[1] Defendant J. H. Lasher was granted a nonsuit at the close of the Commonwealth's case on the ground that he was not given proper notice to repair the highway under the Act of June 1, 1945, infra. The question of his individual liability is therefore not before us.

there is a steep hill and the highway cuts across the side of this hill. Operating on the lower side of the highway, Solley and Arnold pushed the strata over the clay down the hill and away from the highway by means of bulldozers. After a few days' work, cracks appeared in the highway and it subsided about two feet. The berm and guard rail subsided also and slid partway down the hill. The stripping was stopped before any clay had been removed from the tract.

It is not disputed that the cause of the damage to the highway was the removal of the strata over the clay. The Commonwealth gave written notice to the Hiles, Humes T. Lasher, and Solley and Arnold, in accordance with the Act of June 1, 1945, P. L. 1242, 36 PS §670-419, known as and hereinafter referred to as the State Highway Law, to repair the highway, and no repairs being made, the Highway Department restored the highway to its original condition at a labor, equipment and material cost of $3,792.52, the amount of the jury's verdict.

The doctrine of lateral support is a very old one. It is the right to have land in its natural state supported by adjoining land. It is well settled that in so far as individual owners of land are concerned, the right ordinarily extends only to land in its natural state, not to artificial improvements erected thereon. ". . . Before the right can be extended to buildings or other improvements imposed thereon, negligence, malice or wantonness must be shown . . . with the exception of those instances where the building is erected on the premises before a part of the land contiguous thereto is sold, as in the case of Durante v. Alba, 266 Pa. 444, 447. . .": *Pollock v. Pittsburgh, Bessemer & Lake Erie R. R. Co.*, 275 Pa. 467, 470, 119 A. 547. The right of the Commonwealth to lateral and subjacent support of the public highways is superior to that of an ordi-

nary land owner. An abutting land owner is charged with the duty of furnishing vertical and lateral support to a public highway in its improved condition: *Scranton v. Peoples Coal Company*, 256 Pa. 332, 100 A. 818; *Breisch et al. v. Locust Mountain Coal Co. et al.*, 267 Pa. 546, 110 A. 242; *Pollock v. Pittsburgh, Bessemer & Lake Erie R. R. Co.*, supra. The Act of June 25, 1937, P. L. 2275 was repealed by the State Highway Law of 1945, supra, but Section 419 of the latter reenacted practically verbatim Sections 1, 2, 3, 4, 5 and 6 of the earlier Act. This section provides that whenever a State highway subsides by reason of failure of lateral support, the person or corporation then owning the subjacent or adjacent strata must restore the highway to its original condition upon notice from the Department of Highways to do so. If the owner fails to restore the highway, the subsidence is declared a public nuisance which can be abated by appropriate proceedings in law or equity. Section 419 of the Act then goes on to say: "If such owner fails or refuses to provide for the restoration and replacement of the highway, then the department may proceed with such restoration and replacement, and the underlying owners of the subjacent or adjacent strata, both at the time the vertical or lateral support was removed and at the time the subsidence occurred, and their respective assignees, lessees or grantees shall be jointly and severally liable for the cost of restoration.".

In the absence of this legislation, there is no doubt that the Hiles would not be liable to the plaintiff. The Hiles did not themselves remove the overburden causing the subsidence, nor did they exercise any control or supervision whatsoever over defendants Solley and Arnold who actually did the stripping. It was the settled law of this Commonwealth that the lessor of a mine is not responsible for mining done by his lessee

which results in the withdrawal of lateral or subjacent support to adjoining land: *Offerman v. Starr,* 2 Pa. 394; *S. W. Hill et al. v. Ario Pardee et al.,* 143 Pa. 98, 22 A. 815; *Shenandoah Borough v. Philadelphia,* 367 Pa. 180, 79 A. 2d 433. It was also consistently held in cases involving withdrawal of lateral or subjacent support, that the owner or possessor of the supporting land was not liable if he was not the actor in the withdrawal: *Noonan v. Pardee,* 200 Pa. 474, 50 A. 255; and this was true even in cases involving failure of lateral support to a public highway: *Commonwealth v. Panhandle Mining Company,* 315 Pa. 16, 172 A. 106. In the *Panhandle Mining Company* case, the Commonwealth sued to recover the cost of repairing a portion of a State highway which subsided due to mining operations performed by defendant's predecessor in title. We held the defendant not liable, quoting, at p. 19, the following rule from the lower court's opinion: " '. . . Before the Commonwealth could recover in a case of this kind, it must aver and prove that the owner whose premises abutted on the highway has actually mined the coal that caused the damage complained of, and that such mining was the proximate cause of the subsidence of the surface. . .' ". However, subsequent legislation now before us for consideration changed the law as above pronounced.

In determining the application of Section 419 of the State Highway Law, now controlling, we must consider the effect of the lease agreement between the Hiles and J. H. Lasher, which agreement was subsequently assigned to defendant Cresson Hills, Inc. This agreement provided that the Hiles, as lessor did ". . . hereby let, lease and demise unto the Lessee the exclusive right and privilege of mining and removing all of the minable and merchantable Flint Clay that can be mined and removed by the strip mine method at reasonable cost and

safety . . . Together with all the mining rights, the exercise of which are necessary and proper to the mining and removing of the said Flint Clay by the strip mine method, including the right to strip the surface, pile overburden from this and other lands upon the leased premises, . . .". The lease was for a term of one year with an option on the part of the lessee to renew for a like term. It cannot be seriously contested that this lease agreement was an actual sale of the clay, a grant of interest in the land itself, so that the lessee and consequently Cresson Hills, Inc., became the real owner of the underlying clay.[2] The Hiles, however, still retained their title and interest in the strata over the clay, and also the earth underneath.

We are of the opinion that both the Hiles and Cresson Hills, Inc. come within the terms of Section 419 of the State Highway Law of 1945. The Hiles, being owners of the strata over, under and surrounding the clay, clearly come within the first portion of the section which provides that when a State highway is damaged by reason of the failure of lateral support, the persons or corporation owning the subjacent or adjacent strata are obligated to restore the highway to its former condition. Cresson Hills, Inc. likewise is covered by the same provision since, being owner of the clay in the ground, it is an owner of the adjacent strata and accordingly obligated for the restoration. This section of the Act further provides that if such owner fails to restore the highway, then the Commonwealth

---

[2] *Estate of Thomas Lazarus, Deceased,* 145 Pa. 1, 23 A. 372; *Hosack v. Crill,* 204 Pa. 97, 53 A. 640; *Greek Catholic Congregation of Olyphant Borough v. Plummer, Exr'x.,* 338 Pa. 373, 12 A. 2d 435; *Shenandoah Borough v. Philadelphia,* supra; *Delaware, Lackawanna and Western Railroad Company v. Sanderson et al.,* 109 Pa. 583, 1 A. 394; *Smith v. Glen Alden Coal Company et al.,* 347 Pa. 290, 32 A. 2d 227, and many other cases.

may proceed with such restoration and the underlying owners of the subjacent or adjacent strata, together with "their respective assignees, lessees or grantees", are jointly and severally liable for the cost. The Hiles, by owning all of the land except for the clay, and Cresson Hills, Inc., by owning the clay itself, are both owners of the adjacent strata within the meaning of the statute, and therefore are jointly and severally liable for the cost of restoration. In addition, Cresson Hills, Inc., by the purchase of the clay, is a "grantee" of the Hiles, the owners in fee of the land adjoining the highway in question. Section 419 of the State Highway Law, by changing the law so that a lessor of a mineral deposit is now jointly and severally liable for the cost of restoring a State highway damaged through mining operations performed by his lessee, insured that at least the value of the adjoining land would be available to indemnify the Commonwealth for the cost of repairs.

Appellants next maintain that Section 419 of the State Highway Law, supra, violates Article III, Section 3 of the Pennsylvania Constitution in that the title of the Highway Law does not give notice of the legislation contained therein. With this contention, we cannot agree.

Article III, Section 3 of the Pennsylvania Constitution provides: "No bill, except general appropriation bills, shall be passed containing more than one subject, which shall be clearly expressed in its title.". The title to the State Highway Law is as follows: "An Act Relating to roads, streets, highways and bridges; *amending, revising, consolidating and changing* the laws administered by the Secretary of Highways and by the Department of Highways relating thereto.". (Emphasis supplied). Section 419 of the State Highway Law is a reenactment of the Act of June 25, 1937, P. L. 2275,

the title to which read: "An Act to promote safety for the traveling public on State highways; to extend the responsibility for subsidence of such highways by the failure of vertical and lateral support, and declaring said subsidence a public nuisance; . . .".

The State Highway Law is a code, and the law clearly is that the constitutional provision in regard to titles does not require that a code containing statutes previously enacted have in its title all of the items contained in the consolidating legislation: *Lancaster City Annexation Case (No. 1)*, 374 Pa. 529, 98 A. 2d 25; *Commonwealth v. Evans*, 156 Pa. Superior Ct. 321, 40 A. 2d 137; *Borough of Williamsburg v. Bottenfield*, 90 Pa. Superior Ct. 203. In the *Bottenfield* case the title of the Borough Code was: "An Act providing a system of government for boroughs, and revising, amending and consolidating the laws relating to boroughs.". Article 28 of the Borough Code, the specific section there under attack, was, as in the instant case, a reenactment of a previous law which contained a complete title. The title was held sufficient, the Court saying (p. 207): "When, therefore, the legislature took up the task of consolidating the various laws relating to boroughs into a comprehensive compilation or code, it knew, and the public was bound to know, that boroughs already possessed the power recited in section 28, supra; that it was not the conferring of a new power but only its re-enactment in the course of consolidating many acts into one comprehensive statute. Article III, section 3 of the constitution does not require that a general act consolidating many statutes enacted over a course of years, with reference to some broad subject of legislation, shall in its title refer to all the other subjects collaterally affected by the passage of the various statutes to be consolidated. Those affected by such legislation were put upon notice of its effect on them when

the statutes were originally enacted in compliance with Article III, section 3 of the Constitution aforesaid, with the subjects of legislation clearly expressed in their respective titles. It is not necessary to repeat them again in the title of the consolidating act, provided the subject is germane to the general subject of legislation as it existed when the consolidating statute was passed: . . .".

The present case is governed by the above stated principles of law. Those affected by Section 419 of the State Highway Law, supra, were put on notice of its effect when the Act of June 25, 1937, P. L. 2275, was enacted. The title to the Act of June 25, 1937, P. L. 2275, specifically refers to the responsibility for subsidence of State highways by the failure of vertical and lateral support, and therefore it was not necessary to repeat this subject in the title of the State Highway Law.

Judgment affirmed.