Bridgeview Coal Company, Appellant, *v.* Burchinal.

Argued April 17, 1963. Before ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ. (RHODES, P. J., absent).

*Charles R. Spurgeon,* with him *Frank R. Crow, Jr.,* and *Spurgeon & Spurgeon,* and *Parshall & Crow,* for appellant.

*Ben F. Wright,* with him *Lee M. Smith,* for appellees.

Opinion by Watkins, J., September 12, 1963:

In this appeal from a declaratory judgment, entered by the Court of Common Pleas of Fayette County, in favor of the Burchinal Coal Company, defendant-appellee, and against the plaintiff-appellant, Bridgeview Coal Company, the court below held that an alleged deed of an interest in land amounted only to a contractual right to strip the coal vein.

The facts are stipulated by the parties and may be summarized as follows:

Hecla Coal Company, hereinafter designated as A, was the owner in fee of the land in question. On April 16, 1945, A sold and conveyed to Edward Higbee, hereinafter called B, all the unmined coal in the nine-foot vein in and under said tract with mining rights of this vein; and a complete waiver of support of the overlying strata and surface. By this deed B was the owner of the coal in the nine-foot vein and could remove it without any duty of support. A retained title to the surface and all other minerals underlying the tract and the right of support, with the exception of a waiver granted to B as to the nine-foot vein.

On May 22, 1945, A executed and delivered to B a conveyance of the land in question but reserved all the coal, oil and gas in the underlying tract with the mining rights appurtenant thereto, as well as the right to bore for oil and gas.

By these conveyances B now owned the surface of the tract and the nine-foot vein thereunder; and also the right to mine and remove the coal in the nine-foot vein. A retained all coal under the tract, including the five-foot or Redstone vein and, of course, excepting the nine-foot vein. A could still remove all coal in any vein except the nine-foot vein and could remove the

coal in the five-foot vein by any method, including strip mining, without regard to surface support. B, of course, could mine the nine-foot vein without regard to surface support for any intervening veins between the nine-foot vein and the surface by reason of the waiver and his ownership of the surface.

This was the situation when the events resulting in this action occurred. B executed and delivered a deed to the plaintiff by which he purported to sell the five-foot vein, together with the right to mine and remove the same by the strip mining method. The plaintiff contends, although admitting that B never owned the coal in question, that the exclusive right to strip mine this land passed by this deed.

B then sold by deed to the defendant the surface of the land and the nine-foot vein together with the mining rights as to this vein; A by deed sold to the defendant all the other veins of coal retained by it above the nine-foot vein, which included the five-foot vein, with all necessary mining rights thereto.

The situation presented to the court below was whether a deed purporting to convey the five-foot vein to the plaintiff, although it is admitted that the grantor did not have title to the coal, created an exclusive right in the plaintiff to strip mine the vein on the theory that the deeds in question gave the plaintiff the right to surface support.

It should be pointed out that from this record it may be determined that the nine-foot vein, because of the depth of its location, could be mined by the deep mine method; while the five-foot vein, which is near the surface, could only be economically and practically mined by the strip mining method.

"It is well recognized in Pennsylvania that there may be three estates in land, namely, coal, surface, and right of support, so that one person may own the coal, another the surface, and the third the right of sup-

port: Charnetski v. Miners Mills Coal Min. Co., 270 Pa. 459. 'In the absence of express waiver . . . (or one clearly implied) the grantee of minerals takes the estate subject to the burden of surface support.' Penman v. Jones, 256 Pa. 416, 422, 100 A. 1043. 'Where there is a separation of the minerals from the surface, the owner of the mineral estate owes a servitude of sufficient support to the superincumbent estate.' Graff v. Scranton Coal Co., 244 Pa. 592, 91 A. 508. This servitude of support is an estate in land, sometimes referred to in this commonwealth as 'the third estate'. See Penn Coal Co. v. Mahon, 260 U.S. 393, and Fifth Mut. Bldg. Soc. Appeal, 317 Pa. 161, at 168, 176 A. 494." *Smith v. Glen Alden Coal Co.*, 347 Pa. 290, 304, 32 A. 2d 227 (1943).

It is true, too, that, with the advent of modern strip mining methods, our Supreme Court has been required to determine whether or not a party had the right to remove coal by the strip mining method as distinguished from the deep mine method. In determining this the appellate courts look to the deeds of severance for the reservations contained in deeds conveying surface lands, as to whether or not the owner of the coal owed a duty of support and if it is found that there was no such duty then the coal might be stripped. *Com. v. Fitzmartin*, 376 Pa. 390, 102 A. 2d 893 (1954). It follows that if, together with title to the coal, mining rights are granted, and the coal in question is close to the surface so that the only practical and economically feasible method of removing the coal is by the strip mining method, the grant of mining rights imply stripping as well as deep mining. *Com. v. Fitzmartin*, supra. The difficulty in our case is that the grantor never had title to the coal.

The plaintiff contends that B had acquired the third estate in land, the right of support, by the deeds from A conveying the nine-foot vein and the surface

and that therefore only the one owning that estate in land could strip mine because by its very nature, this type of mining destroys the surface and its support. We agree with the court below that all B acquired by the deed was a waiver by A of B's duty to support the surface while removing the coal from the nine-foot vein. He never acquired the right of support by conveyance as A could have, at any time, removed the coal in the intervening veins without any duty to support the surface subsequent to the conveyance of the nine-foot vein. As the court below said:

"Were it not for the reservations contained in the grant of the surface to B., we might well agree with his contention that the waiver of support, coupled with the grant of the surface, vested in B. the substantive right to support. In this deed appears the reservation of 'all of the coal, oil and gas in and underlying the above described tract, together with the mining rights appurtenant thereto, together with the right to drill or bore for oil and gas.' When we examine this phrase, 'the mining rights appurtenant thereto,' we can only conclude that it was intended to mean exactly what it says, namely, the right to mine and remove the coal underlying the tract conveyed. In this day and age when strip mining methods have so far developed as a means of mining and removing coal located near the surface, it appears to be highly illogical to assume that the parties did not intend to include this method of mining in the reservation. Particularly is this true when the strip mining method is the only possible and practical method available for removing the coal. If it were to be determined that the strip method of mining was not included in the 'mining rights appurtenant thereto', then the reservation would be wholly meaningless, for the Redstone vein, lying as it does near the surface, cannot be removed by any other practical method.

"We may only conclude, therefore, that B. did acquire the land in question, but under and subject to A.'s right to mine and remove the coal underlying the same, without regard to support for the surface; and all that the plaintiff, Bridgeview Coal Company, ever acquired from B. was a mere contractual license to strip mine the coal. This license to strip was not an estate in the land, and could only be operative as between the parties to the contract; and then only if B. should ever acquire title to the Redstone coal in the future. Since there is little likelihood of B. ever acquiring title to the Redstone coal in the existing circumstances, thus giving rise to the doctrine of estoppel, we may only conclude that the plaintiff has no right to strip the Redstone coal, as against the defendant. The plaintiff's remedy, if it seeks one, must of necessity be against B."

Judgment affirmed.