496 A.2d 782

**Doris LICHTENFELS, Grace Doppelheurer, Samuel F. Morrison, Maxine Beye, Lois Miller, Martha Greene, David L. Morrison and Raymond Morrison**

**v.**

**BRIDGEVIEW COAL COMPANY and Delta Mining, Inc.**

**Appeal of DELTA MINING, INC.**

Superior Court of Pennsylvania.

Argued April 9, 1985.

Filed July 26, 1985.

258

260

Charles C. Keller, Washington, for appellant.

Ira B. Coldren, Jr., Uniontown, for Bridgeview Coal Co., appellee.

Before WIEAND, CIRILLO and JOHNSON, JJ.

CIRILLO, Judge:

The issue on this appeal is whether a surface lease with mining rights, executed by less than all the owners of the property, survives a partition sale of the property to a third party.

The aggrieved party on appeal is Delta Mining, Inc., which on January 10, 1979 leased a 150-acre tract of land from nine of its ten owners by tenancy in common. The lease conveyed the land together with all rights necessary for the proper mining of coal thereunder, including rights-of-way for transportation and haulage, for a period of three years. The lease further gave Delta the right to extend the agreement on the same terms, "for such time as may be

required to mine, remove and market all of the coal seams under said leased land." The agreement provided for the payment of royalties to the lessors based on tonnage of coal removed from the ground.

The lease did not, however, convey any interest in the coal itself. The coal was owned by another person, who independently contracted to lease a 75% interest in the coal to Delta, with the remaining 25% interest going to Bridgeview Coal Company.

At the end of the option period prescribed in the surface lease, Delta exercised its option and extended the lease for an additional three years. Delta, however, was unable to get the approval of the Pennsylvania Department of Environmental Resources to begin mining, as it had failed to obtain the consent of 100% of the surface owners.

In early 1982, the surface owner who had not joined in the lease, and one of the owners who had, by separate deeds conveyed their one-tenth interests in the tract to Bridgeview Coal Company. Consequently, Bridgeview acquired an undivided two-tenths interest in the land as tenant in common with the remaining eight owners who were parties to the lease with Delta.

In 1983, the eight lessors commenced an action against Bridgeview in the Court of Common Pleas of Fayette County, seeking partition. Delta Mining was also named as a defendant. After a conference, the court determined that an amicable division of the real estate was not feasible, and ordered a sale confined to the tenants in common. At the partition sale Bridgeview purchased the interests of the other eight owners, and the court confirmed the sale.

The parties then sought the court's ruling on the effect of the sale on Delta's lease. The court determined that the lease was null and void as against Bridgeview. After denying Delta's exceptions, the court entered final judgment on November 7, 1984. Delta appeals.

■ The basic rule of law which the court found controlling is stated in *McCullough's Petition*, 275 Pa. 456, 458–59, 119 A. 585, 586 (1923):

In *Caveny v. Curtis,* 257 Pa. 575 [101 A. 853] speaking through Mr. Justice FRAZER, we laid down the broad principle that "One tenant in common is without authority to bind his cotenants by an agreement concerning the use or control, or affecting the title, of the joint property."

. . . .

The principle which would prevent one tenant in common from binding the land to the disadvantage of his cotenants by lien or by the creation of a right or easement in the common property would likewise prevent him from granting a leasehold interest in it which would prevent partition with all its resulting incidents, including possession.

Thus, under the holding of *McCullough,* Bridgeview, the purchaser at partition, could not be deprived of possession of the premises by virtue of Delta's leasehold interest obtained from less than all the cotenants.

Delta contends, however, that the property interest it acquired through the mining lease was not a mere leasehold interest, but was similar to a mineral estate in the land, conferring on it greater rights than would flow from an ordinary lease. Delta further claims that the nature of the lease as a mining agreement rendered unnecessary the joinder of all cotenants in the lease.

To fully understand Delta's argument, we must review some of the special principles that have developed in Pennsylvania concerning mineral rights in real estate.

▋ Pennsylvania recognizes three separate estates in real property: the surface estate, the mineral estate, and the right to surface support (also known as the "third estate"). *Smith v. Glen Alden Coal Co.,* 347 Pa. 290, 32 A.2d 227 (1943). These estates are severable, and in relation to the same land may be held by three different owners. *Id.*

▊ A sale of coal in place in the ground, or what amounts to the same thing, an agreement leasing the minerals underneath the land until their exhaustion, conveys fee simple in the minerals to the lessee, *Essex Coal Co. Appeal,*

411 Pa. 618, 192 A.2d 675 (1963); *Hummel v. McFadden,* 395 Pa. 543, 150 A.2d 856 (1959); *Smith, supra;* such a lease is thus considered an outright grant of an estate in the minerals to the lessee. *See Pennsylvania Bank & Trust v. Dickey,* 232 Pa.Super. 224, 335 A.2d 483 (1975).

 Another special rule relating to the mineral estate is that a tenant cannot restrain a cotenant with an undivided interest in the land from realizing the value of the estate by producing or consuming the underlying minerals. *See Coleman's Appeal,* 62 Pa. 252 (1869); *Prairie Oil & Gas Co. v. Allen,* 2 F.2d 566 (8th Cir.1924).

> "The tenant in common of a mine may occupy it for the purpose contemplated by all, even though a portion of the soil or ore be removed. Each tenant has the right to use the mine, and ... so long as an estate is used according to its nature 'it is no valid objection that the use is consumption, and it is no fault of the tenant that it is not more endurable.' "

*McCord v. Oakland Quicksilver Mining Co.,* 64 Cal. 134, 141, 27 P. 863, 865 (1883) (quoting *Irwin v. Covode,* 24 Pa. 162, 167 (1854)), *quoted in Prairie Oil, supra,* at 571. *See generally* Annots., 91 A.L.R. 205 (1934), 40 A.L.R. 1400 (1926). The right of a cotenant to develop the minerals on the common land is subject only to the duty to account to the tenants out of possession for their proportional share of the returns. *See Appeal of Fulmer,* 128 Pa. 24, 18 A. 493 (1889); *Coleman's Appeal; Reynolds v. Smith,* 70 Pa.Super. 194 (1918); *see generally* Annot., 5 A.L.R.2d 1368 (1949) (basis of computation).

Combining the foregoing rules, Delta postulates the following: the lease it obtained from the nine part-owners was A) a mining lease, thus B) it belonged to that special class of leases that convey an actual fee estate to the lessee, and therefore C) by entering into the lease Delta acceded to an undivided nine-tenths ownership interest in the surface and support estates. In conclusion, Delta maintains that its interest in the land was not a mere lease from some of the surface owners that could be defeated by a partition sale between Bridgeview and the lessors.

■ Delta's argument is fundamentally flawed in several respects. First, although Delta's lease was indeed a mining lease, it was not a sale of the actual minerals, and thus was not the type of mining lease under which our courts have found a conveyance of a fee estate to the lessee. Second, Delta's attempt to claim fee title to the surface and support estates by analogy to a sale of coal in place is without support in precedent or authority. It would work a drastic change in the law of Pennsylvania to hold that a surface lease is transformed into an outright sale of the surface whenever the lease includes surface mining rights.

■ On the first point, Delta's leasehold interest met none of the traditional requisites under which the courts have found a conveyance of the mineral estate to the lessee in fee. In *Hummel v. McFadden, supra,* the Supreme Court of Pennsylvania summarized the conditions that must be met before a mining lease will qualify as a grant in fee of the mineral estate:

> subsequent decisions eventually solidified the test to be applied to determine whether or not an agreement constituted a sale of coal in place into three general principles: (1) the right had to be exclusive in the vendee; (2) to mine all the coal; (3) and he must have paid either a stipulated consideration, or have been compelled to mine, or what is the same thing, pay for the coal if not mined.

395 Pa. at 551–52, 150 A.2d at 860 (omitting footnote collecting cases). Obviously the right granted Delta under its lease was not "exclusive in the vendee," because the landowner who did not join in the lease could not have been prevented from entering the land and exercising whatever mining rights the landowners had. *See McKinley v. Peters,* 111 Pa. 283, 3 A. 27 (1885); *Prairie Oil, supra.* Nor could the lessors convey any right "to mine all the coal," as they had no rights to the coal. Nor, for the same reason, could the lease compel Delta to mine the coal or pay for it if not mined.

Delta concedes that the lease did not operate as an actual grant of the mineral estate. However, Delta points out that the agreement gave it complete rights to strip-mine the premises in pursuit of coal. Because these rights if exercised necessarily would entail consumption or destruction of the surface and underlying support, Delta argues that by analogy to a coal lease it obtained fee title to the surface and support estates.

In support of its contention that a conveyance of surface mining rights can act as a grant in fee of the surface estate, Delta cites *Everly v. Shannopin Coal Co.*, 139 Pa.Super. 165, 11 A.2d 700 (1940) (allocatur denied). In that case Shannopin had acquired fee simple to an undivided one-quarter interest in a coal seam, as tenant in common with the three-quarter owner. In conjunction with its fee title to the coal, Shannopin had also obtained mining rights to the surface of the land, including the right to transport coal from its own mines through the common property. After exhausting the common coal, Shannopin continued to transport its own coal through the haulageways cut during the mining of the common coal. The Court held that Shannopin was entitled to continue using the haulageways, subject to an accounting to the three-quarter owner for three quarters of the fair rental value of the common property Shannopin used for its own purposes. The Court interpreted the estate granted to Shannopin by the former one-quarter owner as outliving exhaustion of the coal itself and extending to the space vacated by the coal removed. Consequently, the appurtenant surface mining rights also extended beyond depletion of the coal, and survived as long as Shannopin continued to use the land for the purposes contemplated by the grant.

Delta's reliance on *Shannopin* in effect begs the question whether Delta obtained a valid estate in land by virtue of its lease. No doubt if the agreement Delta entered into were competent to convey to it a fee simple estate as tenant in common with the other owners, then Delta would be entitled to whatever surface mining rights were conveyed

along with the land. However, Delta must first demonstrate that it owned an estate in the land; and since Delta did not own the mineral estate as did the coal company in *Shannopin,* we find Delta's utilization of the *Shannopin* rationale to bootstrap the argument that Delta owned an estate in the surface unconvincing.

As the Supreme Court said in *Hummel, supra,* "each mining agreement must be judged *sui generis* in order to determine the extent to which the parties have bargained." 395 Pa. at 555, 150 A.2d at 861. Where the evidence is insufficient for the court to find an actual sale of the coal in place so as to trigger the "Pennsylvania Doctrine" recognizing a conveyance of the mineral estate in fee, then interpretation of a mining lease must be guided by the same general contract principles that govern any other type of agreement. *Olbum v. Old Home Manor, Inc.,* 313 Pa.Super. 99, 459 A.2d 757 (1983); *see also Stewart v. Chernicky,* 439 Pa. 43, 266 A.2d 259 (1970). Delta directs us to no principle of contract law that would allow a surface lease with mining rights to be interpreted as a grant of the surface estate in fee simple. On the contrary, such a lease generally is considered to be what it purports to be, a right to mine the premises conveying no estate in the surface itself. *See Commonwealth v. Solley,* 384 Pa. 404, 121 A.2d 169 (1956).

We find the contractual effect of Delta's surface lease to be most closely controlled by this Court's decision in *Bridgeview Coal Co. v. Burchinal,* 201 Pa.Super. 602, 193 A.2d 755 (1963). *Burchinal* dealt with the mining rights to a tract of land that contained a nine-foot vein and a five-foot vein of coal, as well as other minerals. A, owner in fee of the land, conveyed to B all the unmined coal in the nine-foot vein together with the mining rights thereto and a waiver of support rights in the overlying strata and surface. Later A sold B the entire surface estate in the land, reserving to itself all underlying minerals and mining rights aside from those granted to B in the earlier transaction.

B then executed and delivered a deed to P purporting to sell the five-foot vein of coal together with the right to mine

and remove the coal by the strip mining method. Subsequently, B sold the nine-foot vein and appurtenant mining rights to D, and A sold D the remaining coal, including the five-foot vein, together with mining rights.

P brought an action for declaratory judgment against D, maintaining that it had the exclusive right to strip-mine the five-foot vein on the theory that the deed from B had conveyed to P the right to surface support (the third estate). P admitted that its deed from B was invalid as a conveyance of the coal itself.

The court entered judgment for the defendant, and our Court affirmed. Speaking through Judge Watkins, we said:

[i]f, together with title to the coal, mining rights are granted, and the coal in question is close to the surface so that the only practical and economically feasible method of removing the coal is by the strip mining method, the grant of mining rights imply [sic] stripping as well as deep mining. *Com. v. Fitzmartin,* [376 Pa. 390, 102 A.2d 893 (1954) ]. The difficulty in our case is that the grantor never had title to the coal.

201 Pa.Super. at 606, 193 A.2d at 757. We therefore held:

"all that the plaintiff, Bridgeview Coal Company, ever acquired from B. was a mere contractual license to strip mine the coal. This license to strip *was not an estate in the land,* and could only be operative as between the parties to the contract; and then only if B. should ever acquire title to the [5-foot vein] in the future. Since there is little likelihood of B. [sic] ever acquiring title to the [5-foot vein] in the existing circumstances, thus giving rise to the doctrine of estoppel, we may only conclude that the plaintiff has no right to strip the [5-foot vein] as against the defendant. The plaintiff's remedy, if it seeks one, must of necessity be against B."

*Id.,* 201 Pa.Superior Ct. at 608, 193 A.2d at 758 (quoting opinion of the trial court) (emphasis added).

■ Here, just as in *Burchinal,* Delta failed to acquire any estate in the coal from the lessors; all it obtained, in

effect, was a license to strip the coal, contingent, of course, on its acquiring rights to the coal itself.

We turn now to consider the effects of Delta's license on Bridgeview's right to purchase the land in partition proceedings.

■ A lessee, either by the length of his term or by the nature of the lease, may acquire a sufficient interest in the land to be entitled to notice and party status in a partition proceeding, where his interest in the land might be prejudiced by partition. *See Etnier v. Pascoe*, 275 Pa. 308, 119 A. 406 (1923); *Duke v. Hague*, 107 Pa. 57 (1884). In the *Duke* case, the Supreme Court went so far as to say that a lessee with a long term of years from one tenant in common would be entitled to partition against the other tenants in common. *Duke's* actual holding, however, was that a lessee of land for the extraction of minerals had an interest in the land that could not be avoided by an amicable partition proceeding wherein a third party with actual knowledge of the lease bought from the lessors. Delta relies on this case to support its claim that Bridgeview Coal Company, having known of Delta's lease, could not defeat the lease by purchasing the land at partition.

■ Two salient factors distinguish *Duke* from the present case. First, in *Duke* the lessee had obtained an exclusive right from the tenants in common to mine the premises for "petroleum, rock, or carbon oil." The lease entitled him to take as much of these minerals as he could extract during the twenty-year term of the lease. Under the law of this Commonwealth, the lessee had acquired an actual mineral estate in the land, notwithstanding that the grant was for a term of years. *See Essex Coal Co., supra; Commonwealth v. Solley, supra; Boron v. Smith*, 380 Pa. 98, 110 A.2d 169 (1955). *But cf. Olbum, supra.* Secondly, in *Duke* all cotenants with an ownership interest in the land at the time of the lease had joined in the lease; the partitioning of the land came only after one of the lessors had lost his undivided one-quarter interest in the land through mortgage foreclosure. Thus, *Duke* did not even decide whether a lease executed by less than all tenants in

common can be superior to the rights of a third party taking at partition. *See also Sheets v. Allen,* 89 Pa. 47 (1879) (clay mining lease granted by sole owner of property).

The case of *McKinley v. Peters, supra,* actually bears a much closer resemblance to the situation at hand. In *McKinley* the lessee had obtained a ten-year coal lease from one of two tenants in common. The lessee entered the land and mined and improved it. Thereafter, the lessee was evicted before expiration of the lease, apparently at the behest of the tenant who had not signed the lease. The Supreme Court held that eviction of the lessee was proper, as one cotenant had no authority to bind the other.

In short, the mere fact that the lease Delta signed was a coal-mining lease provides no ground upon which Delta can avoid application of the rule laid down in *McCullough's Petition.* The partition sale of the property to Bridgeview Coal Company passed title free and clear of any encumbrances placed on the land by less than all the tenants in common, and Delta has no right to enforce the lease against Bridgeview. Any rights Delta may have against the lessors are not subject to review on this appeal. Accordingly, the decision of the court of common pleas must be affirmed.

Judgment affirmed.