# McKinley for the use of Orr *versus* Peters et al.

1. Where a tenant in common without any authority from his co-tenant, either written or verbal, enters into an agreement with another to lease the coal under their land, which agreement is never ratified by the co-tenant, and the party with whom the agreement is made enters upon the land and makes permanent improvements on it, and is afterwards forcibly dispossessed by the party with whom he made the agreement, he cannot recover in an action against both tenants for damages for his improvements.

2. One tenant in common has no power to bind his co-tenant by an agreement with another to lease their land.

November 10th, 1885. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

ERROR to the Court of Common Pleas No. 2. of *Allegheny county:* Of October and November Term, 1885, No. 166.

[McKinley v. Peters.]

Assumpsit by A. J. McKinley for the use of James L. Orr against John R. Peters and Chester B. Lawrence to recover for a breach of promise on part of the defendants to lease McKinley, who afterwards assigned his interest to Orr, the right to mine coal from a tract of land held by the defendants as tenants in common.

The form of the action was originally covenant by Orr against Peters and Lawrence.

The court permitted the form of the action to be amended to assumpsit, and the plaintiff to be changed from Orr to McKinley for the use of Orr.

On the trial before EWING, P. J., the following facts appeared:—

John R. Peters, one of the defendants, during the period covered by this case lived in Georgetown, Beaver County, Pa.; Chester B. Lawrence, the other defendant, during the same time lived in the City of New York.

Prior to September 9th, 1879, they owned, as tenants in common, about two hundred acres of land on the Ohio River, about one mile above Georgetown, Beaver County, Pa., underlaid with coal, which had been opened for a short distance and badly worked. On that day an agreement in writing was executed by Peters and McKinley and delivered to McKinley, which contained these premises:

This memorandum of agreement made and entered into this ninth day of September, A. D., 1879, by and between John R. Peters of Georgetown, Beaver County, Pennsylvania, party of the first part, and A. J. McKinley, of Pittsburgh, Allegheny County, Pennsylvania, party of the second part. Witnesseth: that for and in consideration of the covenants and agreements on the part of the party of the second part herein contained, the party of the first part—for and in behalf of himself and Chester B. Lawrence, of the City of New York, who jointly own two hundred acres of land about one mile above Georgetown and fronting on the Ohio River, on which are several veins of coal, among which is a vein or mine of bituminous coal, known as "the four foot vein"—doth covenant and agree to and with the said party of the second part, to grant him a lease for ten years from the date hereof, upon the terms and conditions hereinafter stated, of the said four foot vein of bituminous coal.

The terms and conditions on which the lease *is to be* granted, and which are hereby agreed to by the party of the second part, are as follows, viz:

(Then follows the terms and conditions, the said agreement concluding as follows):

[McKinley v. Peters.]

It is understood and agreed that a lease shall be made and executed by and between the parties hereto on all the terms and conditions herein contained (which is hereby agreed to by both parties) within sixty days from the date hereof, and it is also further understood and agreed upon by the parties hereto that in case of the non-fulfillment of any of the provisions or stipulations contained in the agreement, or the lease based upon it, by the party of the second part, both the agreement and the lease are forfeited and become null and void at the option of the party of the first part, anything to the contrary herein contained notwithstanding.

It is furthermore understood and agreed upon by the parties hereto that all the provisions and stipulations of this agreement and the lease when made are to extend to and bind their successors, administrators or assigns.

In witness whereof the said parties hereto have hereunto set their hands and seals the day and year first above written.

Witness: R. CALHOON,　　JOHN R. PETERS,　　[SEAL.]
　　　　　　　　　　　　　A. J. MCKINLEY,　　[SEAL.]

A. J. McKinley entered into possession under this agreement and mined coal thereunder until the latter part of 1879, when he associated James L. Orr with him, and together they worked the mine until January 15th, 1880, when McKinley assigned all his interest in the lease to Orr, who then took exclusive possession and proceeded without delay to improve the works. The improvements were large and valuable, the cost of the same being from $10,000 to $12,000. Peters lived near the mine and took an active interest in all that was going on about the same. He was frequently on the ground and knew that Orr was working the mine, and on several occasions expressed his satisfaction that such was the case. Orr paid to Peters rent or royalty for the coal mined and received from him receipts therefor, acknowledging the payments by Orr, not as agent, but as principal. Lawrence never executed the *agreement* to lease. There was never any lease made. Neither did Lawrence ever receive any of the royalties.

Orr continued in possession until March 10th, 1882, when the defendant Peters with a force of men took possession of the mine and works, during the temporary absence of Orr, and declared the lease forfeited.

This suit was then brought to recover for the injury sustained.

The plaintiff made the following offer of evidence:

" Plaintiff's counsel propose now to offer evidence tending to show the improvements made by both the legal and equitable plaintiff in the premises, the eviction therefrom of the equitable

plaintiff and the damage suffered by him. · Further, to · show that the period in which said improvements were made extended over two years without objection on the part of said Lawrence, and with the approbation of the said Peters, and that said improvements were large and valuable and notorious; the cost of the same being from $10,000 to $12,000. Which was objected to by defendant's counsel as incompetent and irrelevant under the form of action and pleadings, and because there was not sufficient evidence to be submitted to the jury to charge Chester B. Lawrence in this case. The objection was sustained and bill sealed for the plaintiffs. (First assignment of error.)

The Court charged the jury: "Under the evidence your verdict should be for the defendants." Which was excepted to and a bill sealed. (Second assignment of error.)

Verdict for the defendants and thereupon judgment. Whereupon the plaintiffs took this writ assigning for error the refusal of his offer of evidence and the charge of the court.

*R. C. Duncan* (*A. C. Dickey* and *West McMurray* with him) for plaintiffs in error.

If one signs and seals an agreement for another without any authority under seal, and there be no subsequent ratification by writing under seal nevertheless a subsequent ratification by parol will make it binding as a parol agreement: Grove *v.* Hodges, 55 Pa. St. 516. If an agreement in writing between two be sealed by one but not by the other, the contract remains the same. The only difference is in the remedy.—Id.

If then Lawrence by parol or subsequent acts ratified the agreement in evidence it would be binding on him as a parol contract.

*Thomas M. Marshall*, and *Miller* and *McBride* for defendants in error, were not heard.

The opinion of the Court was filed January 4th, 1886.

PER CURIAM.—The defendants, as tenants in common, owned the land on which the coal was mined. This fact, however, of itself, did not authorize Peters to enter into an agreement which would bind his co-tenant to sell to the plaintiff the unmined coal on the land. Peters had no authority either written or verbal from Lawrence to make the agreement in question. Not only did Peters make the agreement in the absence of authority from Lawrence, but the latter refused to sign it and never ratified it by receiving any portion of the royalty paid or otherwise. The learned Judge· was clearly right in instructing the jury to find for the defendants.

Judgment affirmed. ·