Howard WAGMAN on his own behalf, Seymour A. Freedman, on his own behalf, and Bernard G. Segal, Frances S. Sheerr, Richard C. Sheerr and The Glenmede Trust Company, as Co-Executors of the Estate of Stanley Sheerr, deceased

v.

David B. CARMEL.

Civ. A. No. 84–3600.

United States District Court, E.D. Pennsylvania.

Feb. 6, 1985.

David H. Pittinsky, Carl G. Roberts, Donna M. Albani, Philadelphia, Pa., for plaintiffs.

Jay F. Gordon, Phillips, Nizer, Benjamin, Krim & Ballon, New York City, H.L. Montague, Jr., Berger & Montague, P.C., Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

KATZ, District Judge.

This action arises out of a contract between the parties forming a joint venture to acquire and develop real property located in the Township of Egg Harbor, New Jersey. Plaintiffs seek a declaratory order from this Court stating that a majority in interest of the members of the Atlantic City Joint Business Adventure have the right to sell the entire property of the venture and that no members constituting a minority in interest have a right of first refusal with respect to the proposed sale. Plaintiffs and defendant have filed cross motions for summary judgment and stipulated to the relevant facts. The parties represent that there are no disputed material facts. I find that the plaintiffs are entitled to summary judgment.

On January 4, 1965 the parties or their predecessors in interest executed the Atlantic City Joint Business Adventure Agreement (hereinafter "Agreement"). The Agreement was amended three times, once in 1971, again in 1973 and finally in 1980. The purposes of the joint venture include the acquisition, improvement, leasing, operation and sale of property located in Egg Harbor, New Jersey. Each of the members of the joint venture owns an interest in an undivided portion or share of the venture's property equivalent to the interest of that member in the venture as a whole. Under the Agreement and subsequent amendments thereto a member's undivided portion or share of the venture property is "co-extensive" with that member's interest in the venture itself. According to Paragraph 8 of the December 31, 1980 Amendment to the Agreement, "Transfers of such interest in the PROPERTY and of related Membership interests hereunder may not be made separately; a transfer of the Membership interest herein shall effect a transfer of the related interest in the PROPERTY and vice versa." Record title to the property is held by a trust.

Under the original Agreement, all actions of the joint venture required the unanimous consent of its members. In 1971 this provision was amended to eliminate the necessity of unanimous consent and instead to require only a majority vote. Article I, Section 2(c) now provides that "[a]ll actions of the Joint Business Adventure shall be authorized by a majority in interest of the Members... All members respectively agree to be bound by and to execute and deliver all such instruments and do all such things as may reasonably be required of them to carry out actions agreed upon by the Members..."

Article V, entitled "Changes in Membership" contains the provision chiefly at issue in this action. As amended in 1980, Article V, section 1 prohibits a member from selling or otherwise disposing of his interest in the joint venture unless the other members unanimously consent thereto or unless the Agreement so provides. Section 3 provides that a member may sell his entire "Membership interest" to a third party subject to the right of first refusal of the other Members and of the venture itself. Section 3 provides that "[w]ithin thirty (30) days of the receipt of such written notice [of the

proposed sale to a third party], the other Members of the Adventure may elect to purchase all, but not less than all of the interest being sold by the selling Member upon the same terms and conditions as the offer received by the selling Member...." In the event that no Member asserts his right in thirty days to purchase the membership interest, the venture itself may purchase the interest. Should neither the other members nor the venture assert a right of purchase, the third party may purchase the interest subject to the requirement of executing appropriate documents agreeing to be bound by all of the terms and conditions of the Agreement.

Article VII, section 1 of the Agreement provides that it shall be interpreted in accordance with the laws of the Commonwealth of Pennsylvania.

Since 1980, members of the joint venture have sought a purchaser for the Egg Harbor property. In 1981–1982 the members received an offer to purchase the property by the Rouse Company. By letter, dated March 25, 1982, the defendant objected to the proposed sale to Rouse and asserted his alleged right of first refusal. The sale to Rouse was never consummated. Further negotiations with other potential purchasers have also failed to result in an agreement to sell the property. Plaintiffs allege in their complaint that the defendant's assertion of a right of first refusal has thwarted all of their efforts to sell the Egg Harbor property since it has created uncertainty over their power to convey good title.

Plaintiffs, all original members of the joint venture or the original members' successors in interest, seek an order by this Court declaring that a majority may agree to sell the venture's property free from any individual member's right of first refusal. Plaintiffs argue that the majority rule language in Article I governs the sale of the venture property and that all members are contractually bound to take all steps necessary to implement decisions arrived at by the majority. They further assert that the right of first refusal provision applies to the sale of individual membership interests in the ongoing venture and therefore not to the sale of the entire venture property. Defendant responds by arguing that a majority of the venture's members may not force him to sell his interest since he owns an undivided share in the venture property as a tenant in common. Furthermore, since the sale of the venture property also results in a sale of membership interests, the defendant asserts that the first right of refusal provisions in Article V govern, thereby allowing him the option of purchasing his co-venturers' interests.

■ In their cross motions for summary judgment, plaintiffs and the defendant ask this Court to construe the provisions of the Agreement in accordance with their positions as outlined above. Summary judgment is appropriate in cases where a court is asked to construe contractual clauses that are clear and unambiguous despite the parties' differing views as to what consequences flow from those provisions. *See Landtect Corp. v. State Mutual Life Assurance Co.*, 605 F.2d 75, 79–80 (3d Cir. 1979); *County of Erie v. American States Insurance Co.*, 573 F.Supp. 479, 483 (W.D. Pa.1983), *aff'd*, 745 F.2d 45 (3d Cir.1984); C. Wright, A. Miller, & M. Kane, *Federal Practice and Procedure* § 2730.1 (1983). All parties in this case assert in their cross motions for summary judgment that the contractual provisions are clear and that no material facts are in dispute. I find from my analysis of the contract that the provisions involved in this dispute are clear and unambiguous and that giving them legal effect through construction is a matter for the Court. *Cf. Ram Construction Co. v. American States Insurance Co.*, 749 F.2d 1049 at 1052–1053 (3d Cir.1984).

I

The first issue this Court must decide is whether a majority of the members in interest of the joint venture may alienate the venture's property. The 1971 Amendment to the Agreement as well as subsequent amendments clearly state that "all actions" of the venture shall be authorized by a

majority vote. No exception is made anywhere in the Agreement requiring unanimous consent for the sale of the venture's property. To the contrary, paragraph 2 of the 1973 Amendment provides that "[a]ll provisions of the Agreement which are inconsistent with this paragraph [providing for majority rule] are hereby rescinded...." Therefore, the Agreement clearly provides that a majority may agree to sell the property of the joint venture.

■ Defendant's argument that he cannot be forced to sell the property due to his status as a tenant in common is without merit. A tenancy in common is an estate in which there is a unity of possession, but separate and distinct titles. Each tenant has a right to possess the entire estate, but this right of possession is not exclusive. *See J.M. Shober Farms, Inc. v. Merrill*, 179 Pa.Super. 446, 448, 115 A.2d 384, 386 (1955); 14 Pennsylvania Law Encyclopedia, *Estates in Property*, § 41 at 26 (1959). Ordinarily, although a tenant in common may freely sell or otherwise dispose of his own interest in jointly held property, he may not act so as to prejudice the rights of his co-tenants. For example, a tenant in common may not unilaterally bind his co-tenants to an agreement concerning the use, control, or title to the joint property. *See McKinley v. Peters*, 111 Pa. 283, 3 A. 27 (1885). Nevertheless, a tenant in common may bind his co-tenants to an agreement affecting the ownership of the tenancy property if he or she has been authorized to enter into such an agreement or if the other co-tenants later ratify the agreement. *See Caveny v. Curtis*, 257 Pa. 575, 580, 101 A. 853 (1917); *McKinley v. Peters*, 111 Pa. 283, 286, 3 A. 27 (1885); *Browning v. Cov-*

er, 108 Pa. 595, 599 (1885); 4A Powell on Real Property 633 (1982). Thus, tenants in common can agree that the property may be sold by majority vote.

■ By agreeing to the 1971 Amendment, the defendant has contractually authorized and empowered a majority of the joint venture to sell his interest in the venture's property along with their own, provided that the sale is one of the permissible activities of the venture.[1] Article I expressly includes the sale of venture property as a purpose of the joint venture. All members have agreed to be bound by and to execute and deliver all instruments and to do all things required to implement the decisions of the majority. Defendant may not now avoid the contractual obligations to which he has freely consented. There is no allegation of bad faith or fraud in either the contract or the proposed sale of the property.

## II

■ This Court further construes the clear and unambiguous provisions of Article V as not granting to any member a right of first refusal with regard to a proposed sale of the entire venture property. A joint venture agreement is a contract to which all of ordinary rules of contractual construction apply. *See Richardson v. Walsh Construction Co.*, 334 F.2d 334 (3d Cir.1964). Under Pennsylvania law, a contract is construed or interpreted so as to give meaning to the intent of its signatories.

■ "It is well established that the intent of the parties to a written contract is

---

**1.** *Harrity v. Continental—Equitable Title & Trust Co.*, 280 Pa. 237, 124 A. 493 (1924) does not support a different result. In *Harrity*, the Pennsylvania Supreme Court, in construing an agreement between members of a real estate syndicate, concluded that a specific grant of authority by the members to a trustee to sell the property had precedence over a clause providing that disputes between members of the syndicate be settled by majority vote. Defendant Carmel argues that the right of first refusal provisions contained in Article V of the Agreement like the grant of power to sell to the trustee in *Harrity* indicates that the majority rule provision does not govern a sale of the property. I find, however, that unlike the facts of *Harrity*, no provision in Article V conflicts with or take precedence over the majority rule clause in Article I, at least with respect to the sale of the entire venture property. Article V does not require unanimous agreement prior to the sale of the entire venture property. An individual member has no right of first refusal with respect to the sale of the entire venture property. *See infra* at 1017.

to be regarded as being embodied in the writing itself, and when the words are clear and unambiguous the intent is to be discovered only from the express language of the agreement." *Steuart v. McChesney*, 498 Pa. 45, 48–49, 444 A.2d 659, 661 (1982). In addition, a contract should be construed as a whole, whenever possible, giving legal effect to all of its parts. *See Ludwig Honold Mfg. Co. v. Fletcher*, 405 F.2d 1123, 1131 (3d Cir.1969); *Atlantic Richfield Co. v. Razumic*, 480 Pa. 366, 372–73, 390 A.2d 736, 739 (1978).

█ The clear and unambiguous language of Article V indicates that the parties intended to make the right of first refusal applicable only to the sale of individual membership interests in the ongoing joint venture and not to a transaction which would bring the venture to an end. The right of first refusal is contained in the Article entitled "CHANGES IN MEMBERSHIP." This heading along with the provisions in Article V that a purchaser of a membership interest execute appropriate documents agreeing to be bound by all of the terms and conditions of the Agreement as would an original member clearly show that the parties contemplated that the right of first refusal would apply to proposed sales of interests in the joint venture where the venture continued following sale.

Construing the right of first refusal as being effective only when a member proposes to transfer his or her interest in the ongoing joint venture is consistent with the usual purpose of such a clause in real estate joint venture agreements. Each joint venturer has an interest in maintaining some control over the transferability of interests in the enterprise.[2] For example, a member whose role it is to develop the property may want to be assured that the other members whom he relies upon to

provide investment capital have sufficient economic capacity to make additional contributions. Likewise investor-members want to make sure that one who purchases the developer's interest has sufficient experience and ability to guide a successful project. All members will be wary of allowing transfers of membership interests to persons who are incompatible or whose reputations would be likely to reflect unfavorably upon their own. *See* Bell, *The Real Estate Joint Venture*, Real Estate Review, Fall 1983, at 34; Leon, *Designing The Real Estate Joint Venture to Work*, Real Estate Review, Spring 1973, at 33, 40; Leon, *Some Basic Non-Tax Considerations in Preparing Real Estate Joint Venture Agreements* in Joint Ventures in Real Estate 42 (1972) (Practising Law Institute, Real Estate Law and Practice Course Handbook No. 61).

Therefore, the right of first refusal contained in Article V of the Agreement applies only to the proposed sale of membership interests in a venture that will continue after the transfer. In this case, however, the sale of the venture's property will effectively end the venture, itself. In *Richardson v. Walsh Construction Co.*, 334 F.2d at 336, the Third Circuit defined a joint venture under Pennsylvania law as follows:

A joint venture is an association of persons or corporations who by contract, express, or implied, agree to engage in a common enterprise for their mutual profit. The essential elements of a joint venture are: (a) a joint proprietary interest in, and a right to mutual control over, the enterprise; (b) a contribution by each of the parties of capital, materials, services or knowledge; and (c) a right to participate in the expected profits.

2. Article V, Section 2 of the Agreement, as amended in 1980, also demonstrates the importance the venturers placed upon having restrictions over who becomes and remains a member of the joint venture and an owner of the venture property. This section provides that "a transfer of the Membership interest [in the joint venture] ... shall effect a transfer of the related interest

in the PROPERTY and vice versa." Thus a member who sells his membership interest in the joint venture must also transfer his interest in the venture's property. Likewise, a member who sells his tenancy in common interest in the real property must also give up his voting interest in the joint venture, itself.

A joint venture is distinguished from a partnership in that it is usually formed to undertake a single business transaction rather than a general and continuous business enterprise. *See Beavers v. West Penn Power Co.*, 436 F.2d 869, 872 (3d Cir.1971); *McRoberts v. Phelps*, 391 Pa. 591, 599, 138 A.2d 439, 444 (1958); *West v. People's First National Bank & Trust*, 378 Pa. 275, 282, 106 A.2d 427, 431 (1954). If no date is fixed by contract, a venture continues until its purpose is accomplished or has become impracticable. *See April Enterprises, Inc. v. KTTV*, 147 Cal.App.3d 805, 195 Cal.Rptr. 421, 428 (1983); *Sheridan v. McBaine*, 660 S.W.2d 188, 194 (Mo. App.1983), Jaeger, *Joint Ventures: Membership, Types and Termination*, 9 Am.U. L.Rev. 111, 127 (1960).

In the instant case, the purpose of the Atlantic City Joint Business Adventure terminates once the property located in the Township of Egg Harbor is sold. The joint venture was formed solely for the purpose of acquiring, developing, managing, and selling this property. Therefore the sale of the property will complete the venture's business; all that will remain is the winding up of the business and the distribution of profits.[3]

Since the right of first refusal contained in Article V is activated only upon the proposed sale of a member's interest to a third party under circumstances where the venture will continue following sale, I find that it is not activated by a proposed sale of the entire property.[4] Therefore, the defendant has no right to purchase the Egg Harbor Property should a majority of the Atlantic City Joint Business Adventure agree to sell it to a third party.

**3.** The Agreement also specifically indicates that the joint venture will be liquidated upon the sale of the venture property. Article III, Section 4 provides that "upon a sale of the PROPERTY or upon the dissolution of the Adventure, assets and funds of the Adventure shall be distributed…"

**4.** Following oral argument on the cross motions for summary judgment, defendant's counsel submitted an alternative proposed order to this Court for the purpose of "accommodat[ing] … the concept of fairness…." This proposed Order provides that a majority in interest of the joint venture may authorize a sale of the venture property and that a minority member may assert a right of first refusal with regard to the entire property. In construing an agreement, a court may not, as the defendant seems to suggest in his proposed order, rewrite clear and unambiguous contractual provisions to achieve a result that arguably may be more fair to the parties. *See Brokers Title Co. v. St. Paul Fire Marine Insurance Co.*, 610 F.2d 1174, 1181 (3d Cir.1979). The right of first refusal clause in Article V of the Agreement refers to sales of membership interests in an ongoing joint venture and not to a sale of the entire venture property. The parties freely bargained for this clause and this Court will not substitute its judgment of what is fair for theirs. If the parties wanted to achieve the result suggested by defendant's proposed alternative order, they could have included such a clause in their contract. This Court notes that similar clauses have been widely used in real estate joint venture agreements in the past. *See, e.g.*, Nellis et al, *Form of Joint Venture Agreement*, in Realty Joint Ventures 1983, 411, 442 (1983) (Practising Law Institute, Real Estate Law and Practice Course Handbook No. 235) (Right of First Refusal on All Joint Venture Assets clause).