**HC TULIFUA TINI P. LAM YUEN,**
**Senior Matai of the Tulifua Family for himself**
**and on behalf of the TULIFUA FAMILY, Plaintiff**

v.

**TALAE TUITELE and HEIRS OF UAINE TUITELE,**
**TOM HO CHING, and PATRICIA HO CHING, Defendants**

High Court of American Samoa
Land and Titles Division

LT No. 10-93

July 13, 1998

Before RICHMOND, Associate Justice, and LOGOAI, Associate Justice.

Counsel: For Plaintiffs, Afoa L. Su`esu`e Lutu
For Defendants, Gata E. Gurr

## OPINION AND ORDER

Plaintiff HC Tulifua Tini P. Lam Yuen ("Tulifua") brought this action to determine whether certain land is communal land of the Tulifua family or is individually owned land of defendant Heirs of Uaine Tuitele ("the heirs"). Both Tulifua and defendant Talae Tuitele ("Talae"), on behalf of the heirs, base their claims on original and continuous occupancy. Tulifua also objected to registration of a proposed lease of a portion of the land by Talae to defendants Tom Ho Ching and Patricia Ho Ching ("the Ho Chings"). The case was tried on December 18 and 19, 1997. Tulifua and Talae were present with their counsel throughout the trial.

### Discussion

The land at issue ("the land") is located in the Village of Taputimu, American Samoa. The land is named "Nonuaimoa" and contains approximately 14.18 acres. On July 13, 1989, the Territorial Registrar issued a certificate of registration of the title to the land as the

individually owned land of the "Heirs of Uaine Tuitele."

■ The evidence in the record could support either a claim of communal land or a claim of individually owned land at the time of the title registration. However, if the title registration is valid, there is no need to reach this issue. When certain land has a valid title registration, "the law . . . conclusively presumes either that the procedures for alienation of communal land were met or that the land was not communal." *Ifopo v. Siatu`u,* 21 A.S.R.2d 24, 27 (Appellate Div. 1989). Therefore, we will first resolve the issue of whether the title registration was valid. The overriding policy of the statutory registration process is to permanently secure titles to land. *Id.* at 28. When the title to land is properly registered, "all other claims of ownership are forever precluded." *Id.* at 26. The court must assume that the Territorial Registrar registered a title in compliance with the law. The court will engage in a *de novo* review of compliance only when there is a facially defective record of the registration, proof of a fraudulent registration, or other compelling grounds. *Id.* at 28.

■ Tulifua challenges the Territorial Registrar's record of the registration in two facial respects. First, Tulifua cites the 18-year delay after the land was surveyed before Talae offered the land for registration on May 10, 1989. The proponent of a title registration must submit a properly performed survey with the offer of registration. A.S.C.A. § 37.0102(a), (b). The surveyor and *pulenu`u* (or "the mayor") of the village where the land is located, or nearest to where the land is located, must verify, by a certificate accompanying the survey, that the *pulenu`u* gave public oral notice in the village at a meeting of the chiefs of the village of the time and place of the intended survey. A.S.C.A. § 37.0102(c). The purpose of this notice is to give interested landowners opportunity to be present at the survey. *Id.*

The record of the registration shows that the surveyor certified in June 1971, and that the American Samoa Government's lands and survey manager certified on June 18, 1974, that the survey of the land was conducted in conformance with the laws and regulations pertaining to surveys. On May 18, 1987, the same surveyor and the *pulenu`u* at the time of the survey in 1971 certified that on June 5, 1971, the *pulenu`u* gave public oral notice of the time and place of the intended survey at a meeting of the Taputimu village chiefs.

■ When litigation arises out of an objection to an offer for registration of title to land, lapse of time between the survey and the registration offer raises a question of fact whether rival claimants to the particular and adjacent lands received fair notice of the intended survey. *Lualemaga v. Asifoa,* 9 A.S.R.2d 85, 87 (Land & Titles Div. 1988).

207

*Lualemaga* was an ongoing disputed registration proceeding.[1] This case, however, concerns a concluded registration proceeding which carries a presumption of finality. *Ifopo v. Siatu'u,* 10 A.S.R.2d 66, 73 (Land & Titles Div. 1989). The present certificate is not facially invalid. Thus, we conclusively presume that in 1971 notice of the intended survey was given and that the actual survey was performed contemporaneously and in accordance with A.S.C.A. § 37.0102.

Next, Tulifua claims that the Territorial Registrar's record shows that the notice given for the proposed title registration of the land was defective. On May 10, 1989, when Talae offered the land for registration, the law required that notice of the proposed registration be posted for 60 days on the bulletin board at the courthouse in Fagatogo and at two public places in the village in which or nearest to which the land is situated. A.S.C.A. § 37.0103(a) (1981) (amended May 22, 1989). The purpose of this notice is to afford persons claiming interests in the land adverse to the applicant opportunity to object to the title registration. A.S.C.A. § 37.0103(b). If no adverse claims are filed in this 60-day period, and all other requirements are met, the Registrar is mandated to register the title in the applicant's name. A.S.C.A. § 37.0103(c) (1981) (amended May 22, 1989; current version at A.S.C.A. § 37.0103(d)). After legally proper registration, all other claims of ownership are barred forever. *Ifopo,* 12 A.S.R.2d at 26.

■ The notice for the proposed registration affirmatively states that the notice was posted from May 10, 1989 to July 10, 1989, a period of 62 days. The affidavit of posting in the record only confirms the posting for the same period on the bulletin board at the "Administration building" in Fagatogo[2] and on one telephone pole in Taputimu. The affidavit fails to

---

[1] Tulifua also cites *Maugututia v. Savea,* 4 A.S.R. 483 (Trial Div. 1964). *Maugututia* was likewise a contested registration proceeding and also involved a facially defective certificate by the surveyor and *pulenu'u.* The survey was first conducted in 1946 by one surveyor and was retraced in 1963, 17 years later, by another surveyor. The court stated that the certificate executed in 1963 was invalid because it related to the 1946 survey, not the 1963 survey. The court noted the 17 year time lag between the survey and the notice, not because of the length of this time, but because the survey predated the notice. In the current case, the time lag is between the survey and the offer of registration, not between the notice and the survey. Further, in the current case, neither the survey nor the proposed title registration predates the requisite notice.

[2] Tulifua argues, at least collaterally, that posting the notice on the administration building in Fagatogo should vitiate the registration. Designation of the "Administration building" in the affidavit of posting is not grounds for invalidating a land title registration because A.S.C.A. §

record any posting of the notice at a second public place in Taputimu. The affiant also signed the affidavit on May 10, 1989, when he could not actually have verified posting for 60 days. Finally, the jurat on the affidavit calls for the Territorial Registrar's signature on May 10, 1989 but was not executed on that or any other date.

■ Clearly, the affidavit of posting is facially defective. However, on May 10, 1989, A.S.C.A. § 37.0103 (1981) (amended May 22, 1989) did not require that the posting of the notice at the two public places in the appropriate village be evidenced by an affidavit or any other particular form of evidence. *See Vaimoana v. Tuitasi,* 13 A.S.R.2d 76, 82 (Land & Titles Div. 1989). The notice of the proposed registration itself shows that the notice was posted for 62 days. Moreover, the Territorial Registrar is obligated to register a land title only when all the statutory requirements are met, and the court should not assume that the Registrar did not carry out this responsibility. *Ifopo,* 12 A.S.R.2d at 28. The court cannot conclude that the required notices were not properly given simply because witnesses testify that they never saw the notices. *Id.*[3]

In 1989, the notice requirements in the land registration laws were supplemented, effective on May 22, 1989. P.L. No. 21-1 (codified as amended at A.S.C.A. § 37.0103). One amendment adds the element of publication in a local newspaper at least once each 30 days during the 60-day notice period. A.S.C.A. § 37.0103(a). The other substantive change requires the registration applicant to submit notarized statements from the *pulenu'u,* newspaper, and clerk of the court that the required notices

---

37.0103(a) (in effect on May 10, 1989, and as amended, effective May 22, 1989) was amended in 1979 to describe the location as the "courthouse." *Vaimaona v. Tuitasi,* 13 A.S.R.2d 76, 82-83 (Land & Titles Div. 1989). The Territorial Registrar merely neglected to change the affidavit form. *Id.* Moreover, the courthouse and administration shared the same building in Fagatogo and were commonly associated by reference for many years. *Id.*

[3] Tulifua presented witnesses who testified that they did not see any second notice posted in Taputimu. One of them also stated that he removed one notice in the village near the land and took it to the Territorial Registrar's Office. This witness also declared that the village chiefs met at some point in June 1971 but that the *pulenu'u* did not give any oral notice of the intended survey at that time.

Talae provided witnesses, including the Territorial Registrar in office in 1989 and his staff member who signed the affidavit of posting. They affirmed that two notices were posted in the village. They also admitted that despite the Registrar's direction to replace the notice torn down, a new notice was not posted at the same or another location during the 62-day period.

have been given before the Territorial Registrar can register the land title. A.S.C.A. § 37.0103(c).

The notice of the proposed registration of the land was not published in a local newspaper. An affidavit from a newspaper was thus not filed with the Registrar. Moreover, the evidence of the courthouse posting comes not from the Clerk of the Court but only in the unsworn statement by the Registrar's staff member. Talae's application for registration of the land was, however, filed 12 days before the effective date of the 1989 amendments requiring proof of the required notice by various affidavits. The 1989 amendments do not have retroactive effect, and this registration is therefore governed by the registration laws as they existed on May 10, 1989, not as they were amended on May 22, 1989. *Ambrosino v. Rodman & Renshaw,* Inc., 635 F. Supp. 965, 974 (N.D. Ill. 1986); *Franklin v. New Mexico, ex rel. Dep't of Human Resources,* 730 F.2d 86, 87 (10th Cir. 1984).

Lastly, Tulifua alleges that the heirs procured the title registration as their individually owned land by fraud. Uaine Tuitele was a member of the Tuitele family of Leone. He was also a member of the Tulifua family of Taputimu. He occupied the land at least as far back as 1929. After his death, the heirs continued to occupy and use the land, virtually exclusive of occupancy and use by any other member of the Tulifua family.

Tulifua believes that Uaine Tuitele and the heirs after his death were on the land as Tulifua family members and representatives of the Tulifua family's communal interests. Based on the evidence, however, we find that Uaine Tuitele and the heirs openly asserted that the land was their individually owned land.

Memories among other members of the Tulifua family may have faded over time during the successive reigns of the Tulifua titleholders. It is also true that the Tulifua title was vacant when the land was surveyed in 1971 and was registered in 1989. Nonetheless, members of the Tulifua family were aware of both the survey and registration processes and failed to timely object to the registration process. We do not find any evidence of fraud by Talae or others among the heirs in offering the land for registration as the heirs' individually owned land.

Since the registration of the title to the land was properly carried out of record, and since there is no evidence of fraud or other grounds to set aside the title registration, we conclude that the heirs own the land as their individually owned land. We cannot, however, direct the Territorial Registrar to record the lease to the Ho Chings.

Talae is regarded as the head of the heirs. In this capacity, he has undertaken a primary role in transactions concerning the land. The transactions in evidence include the Ho Chings' lease. Patricia Ho Ching is one of the heirs. The other transactions in evidence are agreements purportedly separating residential structures from the land to Silimusa M. and Taifita S. Solomona and to Edmund and Mary Pereira. Silimusa Solomona and Mary Pereira are also members of the heirs.

■ Talae has acted in the manner of the *sa'o* (or "senior chief") of a Samoan family exercising *pule* (or "power") over the family's communal land. He has achieved an apparent consensus among the heirs in support of his actions regarding the land. Indeed, the separation agreements describe the land as communal land of the Uaine Tuitele family or of Uaine Tuitele. Traditionally, however, the Tuitele family is a Leone, not a Taputimu, family. No evidence was presented that Uaine Tuitele is a traditional family of either village. Moreover, once land is registered as individually owned land, the court cannot treat the land as communal land simply because the family group associated with the land occupies the land communally. *See Roberts v. Sesepasara,* 7 A.S.R.2d 139, 141-42 (Land & Titles Div. 1988)

■ As owners of individually owned land, the heirs own the land as tenants in common. Uaine Tuitele's children inherited the land in this manner. A.S.C.A. § 40.0202(a). His children received equal undivided interests in the land, and the issue of each deceased child succeeded to those interests, per stirpes. A.S.C.A. § 40.0204. The successors are also tenants in common. *Coulson v. Hillmer,* 612 S.W.2d 124, 126 (Ark. App. 1981). As a tenant in common, each heir has an undivided possessory interest in the entire area of the land and an equal say in the uses of the land. *Wagman v. Carmel,* 601 F. Supp. 1012, 1015 (D. Pa. 1985). The lease to the Ho Chings is thus not valid unless each of the heirs either consented to, gave Talae express or apparent authority to enter, or ratified the lease transactions. None of these alternatives is established by the evidence.

### Order

1. The title registration of the land in the name of the Heirs of Uaine Tuitele as their individually owned land is valid.

2. The lease to the Ho Chings is invalid and shall not be registered by the Territorial Registrar.

3. The Clerk of the Court shall submit certified copies of this opinion and order and the judgment entered in this action to the Territorial Registrar.